IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHEILA A. HENDERSON<br>1530 Rhode Island Avenue, N.E.<br>Apt. 406<br>Washington, D.C. 20018<br><br>   *Plaintiff*<br><br>  v.<br><br>DISTRICT OF COLUMBIA<br>Serve:<br>  Muriel Bowser<br>  c/o Office of Risk Management<br>  441 4th Street, N.W.<br>  Washington, D.C. 20001<br><br>  Karl A. Racine<br>  Attorney General<br>  441 4th Street, N.W.<br>  Washington, D.C. 20001<br><br>  and<br><br>HANSEUL KANG, in her capacity as<br>Superintendent of Education<br><br>Serve:<br>  810 1st Street, N.E.<br>  9th Floor<br>  Washington, D.C. 20002<br><br>  Karl A. Racine<br>  Attorney General<br>  441 4th Street, N.W.<br>  Washington, D.C. 20001<br><br>  *Defendants.* | **Civil Action No.**_____ |

## COMPLAINT

### I. THE PARTIES

1. Sheila Henderson (hereinafter "Plaintiff") is a resident of the District of Columbia and former employee of the District of Columbia Office of the State Superintendent of Education.

2. The Office of the State Superintendent of Education (hereinafter "Defendant") is a "State Agency," of the District of Columbia, operated be the Execute Office of the Mayor of the District of Colmbia.

3. Hanseul Kang (hereinafter "Defendant") is the State Superintendent of Education for the District of Columbia.

### II. JURISDICTION AND VENUE

4. Personal Jurisdiction is proper under the United States Constitution and the principles of due process. Subject Matter Jurisdiction is proper under 28 U.S.C.A. § 1331 as this matter concerns questions of federal statutes under the Americans with Disabilities Act ("ADA") (42 U.S.C.A § 12101 *et seq.*). Supplemental jurisdiction is proper under 28 U.S.C.A. § 1367(a) regarding Plaintiff's claim under the D.C. Human Rights Act (hereinafter "DCHRA") (D.C. Code § 2-1401 *et seq.*) as it arises out of the same nucleus of facts as Plaintiff's ADA claim.

5. Venue is proper under 28 U.S.C.A. § 1391 as Defendant is an agency of the District of Columbia, Plaintiff is a resident of the District of Columbia, and all of the relevant acts and transactions in this case occurred in the District of Columbia.

ETHRIDGE QUINN
KEMP McAULIFFE
ROWAN &
HARTINGER
LAW OFFICES · EST.1987

### III. SUMMARY

6. This case arises out of Plaintiff's employment by Defendant, and Defendant's termination of that employment. Plaintiff is disabled within the meaning of the ADA because she suffers from a Lupus/CREST syndrome which substantially limits Plaintiff's major life activities. While Plaintiff was employed by Defendant, Defendant agreed a Reasonable Accommodation Plan for Plaintiff, which was approved and went into effect on March 11, 2011. On August 24, 2011, without any warning or explanation, Defendant stripped Plaintiff of virtually all of Plaintiff's job duties and responsibilities. About one month later, Plaintiff missed several days of work while on approved leave to undergo some medical tests relating to her disability from September 30, 2011, through October 7, 2011. On October 28, 2011, Defendant terminated Plaintiff and refused to provide Plaintiff with a reason for her termination. It is evident from the timing and sequence of events that Plaintiff's termination was wholly or partly due to her disability. Further, it is evident from Defendant's persistent reluctance to provide Plaintiff a reason for her termination that the reason was partly or wholly due to Plaintiff's disability.

7. Plaintiff filed complaints with the Equal Employment Opportunity Commission (hereinafter "EEOC" or the "Commission") the D.C. Office of Human Rights on November 16, 2011, within the statutory time limits.[1]

### IV. FACTS RELEVANT TO ALL COUNTS

8. Plaintiff was diagnosed with Lupus/CREST Syndrome, an autoimmune disease, which causes debilitating pain and impairs body functions, in 1998. Plaintiff's disease causes Plaintiff intense joint and muscle pain. As a result of Plaintiff's condition, Plaintiff's major life

---

[1] The Statute of Limitation to file a complaint under DCHRA is one year. D.C. Code § 2-1403.04. The Statute of Limitations to file a complaint with the EEOC under the ADA is 180 days. 42 U.S.C.A. § 2000e-5(e)(1).

3

activities are substantially limited: Plaintiff has difficulty walking upstairs, walking long distances, and sitting in cold environments. Plaintiff's disease also causes a hyperactive immune system which leads other bodily system failures. Plaintiff attempts to control her symptoms with daily medications.[2]

9. Plaintiff had been employed by Defendant since September 8, 2003, as a Program Analyst.

10. On February 9, 2011, Plaintiff's primary physician, Julie K. Fox, M.D., wrote a note to Defendant, Plaintiff's employer. (Exhibit 1 attached: Note from Dr. Julie K. Fox dated February 9, 2011). The note was addressed to Raeshawn Crossen, who was the Human Resources Director at the time. The note requested that Plaintiff be allowed to work on a "flexible work schedule" and that Plaintiff have access to the parking garage due to Plaintiff's medical condition.

11. On March 10, 2011, Plaintiff met with Mutinda Parris (the ADA Coordinator) and William Henderson (Plaintiff's supervisor at the time) to discuss and implement a "Reasonable Accommodation Plain," which went into effect on March 11, 2011. (Exhibit 2 attached: Reasonable Accommodation Plan memorandum).

12. On August 24, 2011, a mandatory staff meeting was held. At the meeting, virtually all of Plaintiff's duties and tasks were re-assigned to other members of the staff, leaving Plaintiff with no significant work. This re-assignment was never explained to Plaintiff, neither before the meeting on August 24, 2011, nor after. After the meeting, Defendant never assigned Plaintiff any additional work or tasks.

---

[2] Plaintiff is prescribed 400mg of Prednisone daily; 12.5mg of Cozaar daily, and 12.5mg of HCTZ as needed.

4

13. From September 30, 2011, through October 7, 2011, Plaintiff used her accrued leave for medical reasons directly related to Plaintiff's disability. The requested leave was approved by Defendant.

14. On October 13, 2011, Plaintiff had returned from medical leave. Plaintiff's supervisor, William Henderson approached Plaintiff and informed her that she was in danger of being terminated due to her absences and never being at work.

15. Plaintiff asked Mr. Williams if he had spoken to the Assistant Deputy Superintendent, Greg Meerepol, about her Reasonable Accommodation Plan. Mr. Williams informed Plaintiff that he did not. Mr. Williams gave no explanation why he did not discuss Plaintiff's Reasonable Accommodation Plan with Mr. Meerepol.

16. Plaintiff's neurologist, Dr. Avin, asked Plaintiff to schedule of follow-up appointment on October 26, 2011, to discuss the results of Plaintiff's recent medical tests. Plaintiff submitted a request for leave, which indicated she would be using sick leave for the afternoon of October 26, 2011. Out of extra caution, on October 26, 2011, Plaintiff met with Mr. Meerepol to seek additional permission to work a half day so that she could attend her appointment that afternoon. Plaintiff informed Mr. Meerepol of her request to use her accrued sick leave. Mr. Meerepol granted Plaintiff permission to go to her doctor's appointment.

17. Further, at that meeting, Plaintiff presented Mr. Meerepol with the original copy of her Reasonable Accommodation Plan, which he made a copy of for his records.

18. On the morning of October 28, 2011, Plaintiff was called into a meeting with Jamie Thomas, the Director of Human Resources. At that meeting, Plaintiff was informed that her employment was being terminated. Plaintiff was told that she was an "employee-at-will" and

ETHRIDGE QUINN
KEMP McAULIFFE
ROWAN &
HARTINGER
LAW OFFICES · EST. 1987

that Defendant was not required to provide her with a reason for her termination. Plaintiff was officially terminated on November 14, 2011.

19. Defendant had given the most favorable designation of "Highly Effective" on Plaintiff's most recent performance review. Therefore, Plaintiff's termination could not have been related to her performance. Defendant had no legitimate, nondiscriminatory reason to terminate Plaintiff.

20. Plaintiff filed complaints with the EEOC and D.C. Office of Human Rights on November 16, 2011. (Exhibit 3 attached: Complaints to EEOC and D.C. Office of Human Rights).

21. On June 16, 2014, the EEOC determined that there was reasonable cause to believe that Defendant violated the ADA. On August 3, 2015, the Civil Rights Division of the Department of Justice granted Plaintiff a Right to Sue with 90 days.

## COUNT I
### Discrimination in Violation of the Americans with Disabilities Act

22. The foregoing paragraphs are herein incorporated as if re-alleged.

**a.    Plaintiff is disabled within the meaning of the ADA.**

23. According to 42 U.S.C.A. § 12102(1)(A) the term "disability" means "a physical or mental impairment that substantially limits one or more life activities of such individual." According to §12102(2), major life activities include (A) general major life activities, and (B) major bodily functions. General major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. § 12102(2)(A). Major bodily functions include, but are not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological,

brain, respiratory, circulatory, endocrine, and reproductive functions. 42 U.S.C.A. § 12102(2)(B).

24. As mentioned Plaintiff suffers from Lupus/CREST Syndrome. Plaintiff's disease substantially limits her major life activities and major bodily functions.

25. Plaintiff's disease causes intense joint and muscular pain that makes it difficult for her to walk long distances, walk up and down stairs, and sit in cold environments.

26. Plaintiff's disease causes hyperactive immune system which leads other organ and bodily system failures.

27. Defendant acknowledged that Plaintiff was a "qualified individual" under the ADA (and under the DCHRA) in its memorandum regarding Plaintiff's Reasonable Accommodation Plan.

**b.   Plaintiff was able to perform the essential functions of her job and is, therefore, "qualified" to receive relief under the ADA.**

28. According to 42 U.S.C.A. § 12111(8) a "qualified individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."

29. On her most recent performance review Plaintiff was given the most favorable designation of "Highly Effective."

30. On March 10, 2011, Plaintiff met and discussed a "Reasonable Accommodation Plan" with her supervisor and the director of Human Resources for Defendant so that she would be more able to perform the essential functions of her job while managing her disability.

ETHRIDGE QUINN
KEMP McAULIFFE
ROWAN &
HARTINGER
LAW OFFICES · EST. 1987

31. The Reasonable Accommodation Plan was expressly agreed to by Defendant. Plaintiff was never informed that the Reasonable Accommodation Plan was affecting the quality of her work.

32. Further, the Reasonable Accommodation Plan assured Plaintiff that if her flexible work schedule would be a burden to her department, then there would be another meeting to modify the plan.

**c. Defendant discriminated against Plaintiff by discharging Plaintiff from her employment wholly or partly because of her disability.**

33. According to 42 U.S.C.A § 12112(a), Defendant is prohibited from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

34. On August 24, 2011, within six months of implementing the Reasonable Accommodation Plan, Plaintiff was stripped of the majority of her job duties and responsibilities.

35. Plaintiff was not given any reason for the stripping for her duties and responsibilities.

36. From September 30, 2011, through October 7, 2011, Plaintiff was forced to miss several days of work for medical reasons directly related to her disability. Plaintiff's requested leave in September and October had been approved.

37. Upon returning from that leave, on October 13, 2011, Plaintiff was told by her supervisor that she was in danger of being terminated. Plaintiff's supervisor further explained that Plaintiff was in danger of being terminated because of Plaintiff's constant absence from work.

38.     On October 26, 2011, Plaintiff had requested leave for the afternoon to attend an appointment with her neurologist to discuss the results of her recent medical tests. Further, Plaintiff met with Greg Meerepol, the Assistant Deputy Superintendent, to seek additional permission to attend her medical appointment and to make Mr. Meerepol aware of Plaintiff's Reasonable Accommodation Plan.

39.     Two days later, on October 28, 2011, Defendant terminated Plaintiff's employment. Plaintiff was told that she was an "employee-at-will" and, thus, not entitled to a reason for her termination.

40.     Plaintiff was terminated, partly or wholly, because of her disability and because of the implementation of her Reasonable Accommodation Plan, which allowed her to miss work due to her disability so long as she used her accrued leave.

41.     Defendant stripped Plaintiff of virtually all her job duties and responsibilities in August 2011, and then, Defendant waited for an opportunity to terminate Plaintiff. Clearly, by that time, Defendant had decided to terminate Plaintiff because of her disability. When Plaintiff missed a few days of work in October 2011, Defendant used the missed work as an excuse and opportunity to terminate Plaintiff, despite the facts that Plaintiff used her accrued leave to miss the days in October and that missed days were directly related to Plaintiff's disability.

42.     Defendant offered no alternative legitimate, nondiscriminatory reason for Plaintiff's termination.

43.     Further, upon information and belief, Defendant terminated another disabled employee, James Gatson, at the same time and date that Plaintiff was terminated. Mr. Gatson had undergone brain surgery approximately two years prior and had begun to exhibit symptoms of the brain surgery in the form of repeating himself.

ETHRIDGE QUINN
KEMP McAULIFFE
ROWAN &
HARTINGER
LAW OFFICES · EST. 1987

44. Plaintiff was unemployed for approximately one year. During that year, Plaintiff suffered economic and non-economic damages due to Defendant's discriminatory termination of Plaintiff's employment. As a result, she incurred non-economic damages including, but not limited to, emotional distress and embarrassment. Plaintiff was unemployed for about one year following her termination, and despite efforts to procure work, Plaintiff was without any income for that year. Therefore, Plaintiff is seeking economic damages in the amount equivalent to her yearly salary, from the time Plaintiff was officially discharged on November 14, 2011, until she became employed again on September of 2014, of $58,549.67, plus prejudgment interest, and reasonable attorneys' fees and costs under 42 U.S.C.A. § 2000e-5(k).

45. WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of the Plaintiff and against the Defendant with regards to Count I.

## COUNT II
### Discrimination in violation of the District of Columbia Human Rights Act

46. The foregoing paragraphs are herein incorporated as if re-alleged.

a. **Defendant's termination of Plaintiff's employment was discriminatory and based on Plaintiff's disability.**

47. Under the Human Rights Act in D.C. Code § 2-1402.11(a)(1), an employer is prohibited from discharging or limiting an employee, wholly or partially for a discriminatory reason based upon the actual or perceived disability of the employee.

48. Within six months of Plaintiff's Reasonable Accommodation Plan going into effect, Defendant stripped Plaintiff of virtually all her job duties and responsibilities.

49. Approximately two months after being stripped of her job duties and responsibilities, Plaintiff was terminated by Defendant.

50.   The only explanation ever given to Plaintiff regarding her termination was that she was absent from work too often.  However, Plaintiff never missed any work other than requested and approved leave, mostly for medical purposes directly related to her disability.  Further, Plaintiff had a Reasonable Accommodation Plan in place, which allowed her to arrive later in the mornings, to occasionally work from home, and to miss some work for her disability so long as she used her accrued leave.

51.   Further, on Plaintiff's most recent performance evaluation, Plaintiff was given the most favorable of "Highly Effective."  Therefore, Plaintiff's termination could not have been related to her job performance.

**b.    Defendant had no legitimate reason to terminate Plaintiff's employment.**

52.   Defendant never gave Plaintiff a legitimate, non-discriminatory reason regarding her termination.

53.   Defendant never gave Plaintiff any reason or explanation as to why her job duties and responsibilities were stripped from her on August 24, 2011.

54.   On October 13, 2011, Defendant told Plaintiff that she was in danger of being terminated due to her absences when the only work she had missed was on approved leave related to her disability.

55.   When Plaintiff was terminated on October 28, 2011, Defendant told Plaintiff that she was not entitled to a reason for her termination because she was an "employee-at-will".

56.   As mentioned, on Plaintiff's most recent performance evaluation, Plaintiff was given the most favorable of "Highly Effective."  Therefore, Plaintiff's termination could not have been related to her job performance.

57. Plaintiff suffered economic damages as a result of Defendant terminating her employment. Plaintiff was unemployed for approximately one year following the sudden termination. Therefore, Plaintiff seeks compensatory damages in the form of backpay in the amount equal to one year's salary of $58,549.67 plus prejudgment interest accrued at a rate of 4% compounded annually under D.C. Code § 28-3302(b), and attorneys' fees and costs under D.C. Code § 2-1403.13.

58. WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of the Plaintiff and against the Defendant with regards to Count II.

## CONCLUSION

59. For the reasons stated above, Plaintiff respectfully requests that this Court:

   a. Enter a judgment in favor of the Plaintiff and against the Defendant;

   b. Order Defendant to pay compensatory in an amount not less than $58,549.67;

   c. Grant Plaintiff's reasonable costs and attorneys' fees; and

   d. Grant any further and other such relief as this Court deems necessary and proper.

Respectfully submitted,

ETHRIDGE QUINN KEMP McAULIFFE
ROWAN & HARTINGER

*[signature]*

MICHAEL J. McAULIFFE #412880
33 Wood Lane
Rockville, Maryland 20850
Phone: (301) 762-1696
Facsimile: (301) 762-7691
*Attorney for Plaintiff*

ETHRIDGE QUINN
KEMP McAULIFFE
ROWAN &
HARTINGER
LAW OFFICES · EST. 1987